IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLARD E. WALBRIDGE JR., *Plaintiff*, v. CITY OF OILTON, OKLAHOMA, *et al.*, *Defendants*. | Case No. 24-CV-00374-GAG-JFJ |

**OPINION AND ORDER**

**GUSTAVO A. GELPÍ, Circuit Judge.**[1]

Defendants City of Oilton, Oklahoma, ("Defendant Oilton" or "City of Oilton") and Officer Joe Beers ("Defendant Beers," together with Defendant Oilton, "Defendants") move this Court to dismiss Plaintiff Willard E. Walbridge, Jr.'s ("Plaintiff") complaint ("Complaint") for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons discussed below, this Court **GRANTS** Defendant Oilton's motion to dismiss only as to Plaintiff's Section 1983 claim (Count I)—the only federal law claim. Because the remaining claims against Defendant Oilton (Counts II through VI) arise under state law, this Court declines to exercise supplemental jurisdiction over them. So, these too are **DISMISSED** without prejudice. In contrast, this Court **DENIES** Defendant Beers's motion to dismiss as to all claims.

---

[1] The Honorable Gustavo A. Gelpí, Circuit Judge, United States Court of Appeals for the First Circuit, sitting by designation.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

This case arises from a conflict between Plaintiff—a resident of Creek County, Oklahoma—and Defendant Beers—an officer of the Oilton Police Department ("OPD"). On May 9, 2024, two male individuals went to Plaintiff's residence to discuss their solar panel business. (Dkt. No. 1 at 2.) After Plaintiff welcomed the two men into his property, Defendant Beers approached the two men, asking if they had a "peddlers' license." (Id.) The two men responded that they didn't, and so Defendant Beers instructed them to get in their vehicles and leave the premises. (Id.)

But Plaintiff was not content with Defendant Beers's alleged intrusion. Soon after Defendant Beers's directive, Plaintiff responded by telling Defendant Beers to leave the property. (Id.) Plaintiff alleges that Defendant Beers did not have the authority to be there, interfere with his conversation with the two visitors, and instruct the men to leave the premises. (Id.) In fact, Plaintiff claims that this dispute occurred while he was on his property and outside the Oilton city boundaries. (Id.) For that reason, he repeatedly requested Defendant Beers to leave the property.

---

[2] "The usual rule is that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss." *Waller v. City & Cnty. of Denv.*, 932 F.3d 1277, 1282 (10th Cir. 2019) (quoting *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (2007)). But the Tenth Circuit has held that "[a] district court *may* consider a document outside the four corners of a complaint in deciding a Rule 12(b)(6) motion if the document is (1) central to the plaintiff's claim, (2) referred to in the complaint, and (3) free of any genuine dispute over its authenticity." *See Tufaro v. Okla. ex rel. Bd. of Regents of the Univ. of Okla.*, 107 F.4th 1121, 1131 (10th Cir. 2024) (emphasis added). In other words, at the motion to dismiss stage, this Court has the discretion to consider the foregoing factors and decline to look beyond the four corners of the complaint.

Here, this Court declines to take judicial notice of the body-camera footage and the public records submitted by Defendant Oilton since they are not relevant to Plaintiff's claims here, nor are they free from potential dispute. *See United States v. Murry*, 31 F.4th 1274, 1296 (10th Cir. 2022). So, because of the narrow task at hand, this Court draws the facts from the four corners of the complaint, takes them as true, and goes no further. *See Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024).

(Id.)  Defendant Beers, however, refused to do so.  (Id.)  After some verbal exchange, Defendant Beers attempted to place Plaintiff under arrest by shoving him to the ground, and as that occurred, Plaintiff experienced chest pains and lost consciousness.  (Id. at 2-3.)  As a result, this lawsuit ensued.

Plaintiff sued Defendant Beers and the City of Oilton, lodging claims under 42 U.S.C. § 1983 (Count I) and the Oklahoma Governmental Tort Claims Act  ("GTCA") (Counts II through VI).  (*See generally* id.)  Because the state claims arise out of the same nucleus of operative facts as the Section 1983 claim, this Court has supplemental jurisdiction over them.  *See* 28 U.S.C. § 1367(a); *Royal Canin U.S.A., Inc. v. Wullschleger,* 604 U.S. 22, 31 (2025) ("The federal court has supplemental jurisdiction over state-law claims sharing a 'common nucleus of operative fact' with the federal-law ones." (citation omitted)).

In the Complaint, Plaintiff alleges a series of facts pertaining to Defendant Beers's history as an officer.  (Dkt. No. 1 at 3.)  He asserts that Defendant Beers was subject to a protective order and changed his named from "Reeder" to "Beers" to circumvent the same.  (Id.)  Plaintiff also avers that Defendant Beers has a history of using excessive force against others, including striking an unarmed man and misusing police force by taking a drunk woman to his patrol car and having sexual intercourse with her.  (Id.)  As a result, by failing to conduct a background check and subsequently employing Defendant Beers, Plaintiff submits, Defendant Oilton blatantly disregarded the safety and civil rights of its residents, thus demonstrating deliberate indifference for the rights of others.  (Id.)  For this reason, in addition to his state tort claims, Plaintiff seeks redress under 42 U.S.C. § 1983—a federal statute that allows individuals to sue government officials who violate their constitutional rights while acting under color of law. Discerning a broad

range of alleged pleading defects, however, Defendants now move this Court to dismiss the Complaint for failure to state a claim. (Dkt. Nos. 17, 18.)

## II. DISCUSSION

When ruling on a motion to dismiss, all well-pleaded facts—not conclusory allegations—are taken as true and liberally construed in light most favorable to the nonmoving party. *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017). But the pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Neither labels nor conclusions nor formulaic recitations "of the elements of a cause of action" meet that plausibility standard. *Id.* Indeed, a complaint containing mere "naked assertions devoid of further factual enhancement" will not survive a motion to dismiss. *Id.* "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Okla. ex rel. Dep't of Hum. Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008).

The Complaint sets forth claims against both Defendants under Section 1983 (Count I); Negligence (Count II); Assault and Battery (Count III); and Unlawful Trespass to Property (Count IV). (Dkt. No. 1 at 4-6.) Plaintiff also lodges two state-law claims against the City of Oilton: Failure to Train (Count V) and Negligence in Hiring (Count VI). (Id. at 6-8.) Both Defendants

have moved to dismiss all claims. (Dkt. Nos. 17, 18.) This Court addresses each claim separately, starting with the Section 1983 claim against the City of Oilton.

### A. The City of Oilton's Motion to Dismiss

In moving this Court to dismiss the Complaint in its entirety, the City of Oilton advances five arguments. First, it contends that Plaintiff's Section 1983 claim fails because the Complaint did not identify any act or omission by Oilton that resulted in any violation of his constitutional rights. (Dkt. No. 17 at 10.) Second, it argues that Plaintiff's state-law negligence claim cannot go beyond the pleading stage because the same fails to meet the minimum pleading standard; meaning that, the Complaint "provides no more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." (Id. at 14.) Third, Defendant Oilton submits that the body-camera footage, which captured the incident, clearly contradicts Plaintiff's allegations of being a victim of assault and battery. (Id. at 15.) Fourth, Defendant Oilton also asserts that the video camera, together with a Google Map image and public land records, demonstrate that Defendant Beers did not trespass on Plaintiff's property. (Id. at 16.) Finally, Defendant Oilton posits that the City cannot be liable either for failure to train Defendant Beers or for negligent hiring because the GTCA confers immunity to the City of Oilton under these claims. And so, it believes that the Complaint must be dismissed.

**1. Section 1983 Claim**

   a. **Legal Principles**

Section 1983 establishes civil liability against individuals who, acting under color of state law, deprive others of their "rights, privileges, or immunities secured by the Constitution" of the United States. 42 U.S.C. § 1983. This statutory mandate applies to municipalities whose employees, in their execution of a municipality's policy, practice, or custom, "whether made by its

5

lawmakers or by those whose edicts or acts . . . represent official policy," inflict an injury on others, thereby depriving them of their constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Simply put, a Section 1983 cause of action requires a plaintiff to show that the municipality's policy, practice, or custom directly caused his complained-of harm. *See id.* at 691 (noting that a municipality cannot be held liable "unless action pursuant to official municipal policy of some nature caused a constitutional tort"); *see also City of Canton v. Harris*, 489 U.S. 378, 385, 389 (1989) (holding there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation"). But the Supreme Court has made clear that a "municipality cannot be held liable solely because it employs a tortfeasor." *Monell*, 436 U.S. at 691. "Respondeat superior or vicarious liability will not attach under [Section] 1983." *City of Canton*, 489 U.S. at 385.

The Tenth Circuit has identified the types of municipal policies and customs that can subject a municipality to Section 1983 liability under *Monell*:

> A municipal policy or custom may take the form of (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks omitted) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)). Courts have also recognized a municipality's deficient hiring may give rise to a *Monell* claim. *See Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410-11 (1997); *see also Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770-72 (10th Cir. 2013)

6

(analyzing whether hiring decision reflected deliberate indifference). Here, Plaintiff bases his Section 1983 claim on the allegation that Defendant Oilton has a policy or custom of negligent hiring and inadequate training.

### b. Analysis

As an initial matter, this Court notes that Plaintiff's "inadequate training" allegations under Section 1983 against Defendant Oilton are purely conclusory. (Dkt. No. 1 at 6-7); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Robbins*, 519 F.3d at 1247. This Court, therefore, solely addresses the factual allegation that Defendant Oilton has a policy or custom of negligent hiring because it hired Defendant Beers despite his background as a law enforcement officer.

The "first inquiry in any case alleging municipal liability under Section 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 385; *see also id.* at 389 ("[A] municipality can be liable under Section 1983 only where its policies are the moving force behind the constitutional violation"). When a "municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Brown*, 520 U.S. at 405. "The causation element is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring." *Schneider*, 717 F.3d at 770 (internal quotation marks omitted). Despite this rigorous standard, Plaintiff alleges that Defendant Beers's history—which reveals a Protective Order against him, change of last name, prior accusation of excessive use of force, and sexual assault incident—evinces the City of Oilton's deliberate indifference and blatant disregard for the safety and constitutional rights of its residents.

(Dkt. No. 1 at 3.)  Plaintiff believes that such factual allegations survive a motion to dismiss.  (Dkt. No. 28.)  But this Court disagrees.

Merely asserting that Defendant Oilton failed to conduct a background check does not plausibly allege that a policy or custom resulted in the alleged constitutional violation.  *See Brown*, 520 U.S. at 410-11.  The Supreme Court has cautioned that "[t]o prevent municipal liability for a hiring decision from collapsing into respondeat superior liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Id.* at 410.  For that reason, the factual allegations "cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury." *Id.* at 412.  Instead, the facts in the complaint must plausibly allege that the "officer was highly likely to inflict the particular injury suffered by the plaintiff." *Id.*  And to do so, "[t]he connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." *Id.*

That causal link between a municipal policy or custom and the constitutional deprivation is also intertwined with plausible allegations of deliberate indifference.  *See Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1049 (10th Cir. 2022) ("The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act ***is substantially certain to result*** in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." (emphasis added) (citation omitted)).  A failure to scrutinize an applicant's background constitutes deliberate indifference "where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right." *Brown*, 520 U.S. at 411.  To synthesize, the connection between the officer's background and the alleged constitutional violations must be strong enough to lead a

8

reasonable policymaker to infer that the obvious consequence of hiring the officer would result in the application of excessive force against others. *See Id.* 410-11. It is then and only then that a plaintiff's complaint properly establishes, through the factual allegations at the pleading stage, deliberate indifference and direct causation. But here, Plaintiff failed to do so.

The Complaint fails to allege a direct causal link between a municipal policy or custom and the alleged constitutional deprivation because the purported connection between Defendant Beers's background and the complained-of harm is not strong. *See id.*

First, the Complaint alleges only one fact related to the use of excessive force: Defendant Beers discharged a firearm and struck an unarmed man. (Dkt. No. 1 at 3.) The protective order against Defendant Beers, the fact that he changed last name, and the sexual assault incident, all have little to do with Plaintiff's complained-of harm: the use of excessive force. So, this Court cannot say that the allegations establish a strong connection between Defendant Beers's previous misconduct and Plaintiff's injury here.

To be sure, "[i]n a narrow range of circumstances . . . deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious." *Id*. That, however, is not the case here. The alleged violation is neither highly predictable nor clearly obvious. The bare fact that Defendant Beers had struck an unarmed man—without further factual allegations of the context of such incident—cannot lead a reasonable policymaker to infer that the obvious consequence of hiring him is the use of excessive of force against Plaintiff. *Brown*, 520 U.S. at 411. Indeed, the Complaint does not even suggest that adequate scrutiny of Defendant Beers's employment application would have uncovered this incident. So, from the face of the Complaint, this Court cannot possibly discern the plausibility of such an inference from a single event.

Second, because Plaintiff alleges that Defendant Beers used unjustified excessive force against him, he must also plead that the City of Oilton acted with deliberate indifference in hiring Defendant Beers, despite his alleged history of using unjustified force against others. *See id*. at 412. Yet the allegations in the Complaint belie that claim. The Complaint does not state that Defendant Beers's use of deadly force against another man was unjustified. It merely asserts that Defendant Beers discharged a firearm against an unarmed man, without describing the context. True, Rule 8's pleading requirements do not demand highly specific factual allegations. *See* Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 570. But a complaint must contain facts from which this Court may draw the inference that an officer's previous use of force was unjustified or excessive. *Cf. Cordova v. Aragon*, 569 F.3d 1183, 1192 (10th Cir. 2009) (describing when "deadly force is justified"). Plaintiff does no such thing.

Because Plaintiff fails to establish a strong connection between Defendant Beers's background and the alleged constitutional violations, Plaintiff does not allege sufficient facts showing a direct connection between the City of Oilton's failure to conduct the background check and his complained-of injury. As a result, Plaintiff fails to establish that the City of Oilton acted with deliberate indifference. Plaintiff's Section 1983 claim is therefore dismissed.

**2. State-Law Claims**

Plaintiff asserts various state-law claims alongside his Section 1983 claim. (Dkt. No. 1 at 4-8.) Federal courts hearing federal claims—over which they have original jurisdiction—can exercise supplemental jurisdiction over related state claims that arise from the same case or controversy as the federal claim. *See* 28 U.S.C. § 1367; *Brown*, 124 F.4th at 1272. Because this Court has original jurisdiction over Plaintiff's Section 1983 claim, the remaining state-law claims are properly before it under supplemental jurisdiction. But district courts may decline to exercise

supplemental jurisdiction over state-law claims if the district court has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3) (stating court may decline supplemental jurisdiction over related state claim after dismissing claim with original jurisdiction). And since this Court dismissed the federal claim granting original jurisdiction, the state-law claims are also dismissed, but without prejudice. *See Est. of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1167 (10th Cir. 2004) (holding district court exceeded authority by retaining supplemental jurisdiction over state claims).

### B. Defendant Beers's Motion to Dismiss

Plaintiff lodges four claims against Defendant Beers, one under federal law—Section 1983 (Count 1)—and three under state law—Negligence (Count II), Assault and Battery (Count III), and Trespass to Property (Count IV). (Dkt. No. 1 at 2-5.) Now, Defendant Beers moves this Court to dismiss all four claims for failure to state a claim upon which relief can be granted. (Dkt. No. 18.) For the reasons discussed below, this Court rejects Defendant Beers's arguments. At this stage, the claims against him may proceed.

At the outset, this Court must address Defendant Beers's threshold arguments, which, according to him, demonstrate that dismissal is warranted: (1) he argues that this Court must take judicial notice of the body-camera video that captured the incident which he attached as an exhibit with his motion to dismiss; (2) he asserts that Oklahoma law bars Plaintiff from naming him as a defendant because he acted within the scope of his employment at the time of the incident; and (3) he submits that this action against him must be dismissed because he enjoys qualified immunity. (Dkt. No. 18 at 1-3, 14-15, 17-20.) This Court discusses each argument in turn.

First, Defendant Beers urges this Court to take judicial notice of the body-camera footage depicting the incident between Plaintiff and Defendant Beers. (Dkt. No. 18 at 1-3.) Defendant

Beers so stresses because his motion to dismiss alleges facts that are absent from the four corners of the Complaint: facts that according to him, are supported by the footage. In making this determination, this Court looks for guidance from the body of case law.

"Generally, the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (citation omitted). But courts have acknowledged an exception to this rule. *Id.* Trial judges are not limited to only looking at the facts of the complaint if the following conditions are met: (1) the complaint incorporates documents by reference, i.e., "documents attached as exhibits to the complaint"; (2) the complaint refers to the documents and "the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity; and (3) matters of which a court may take judicial notice." *Id.* at 1186 (citations omitted). On this latter prong, a court may "take judicial notice of its own files and records, as well as facts which are a matter of public record." *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006). Those documents, however, "may only be considered to show their contents, not to prove the truth of matters asserted therein." *Id.* (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir.2002)).

So far so good. But what happens when the plaintiff does not attach those documents to his complaint? The Tenth Circuit has said that "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997). And here, because Plaintiff did not submit the video camera with his Complaint, Defendant Beers submitted it in support of his motion to dismiss and urges the Court to take judicial notice of it. (Dkt. No. 18 at 1-3.) This Court declines to do so. *Gee*, 627 F.3d at

12

1186 (affirming the discretionary language of the exception of what the court "can consider"); *see also Bailey v. Franklin*, No. 20-362, 2021 WL 2345356, at *2 (N.D. Okla. June 8, 2021) (recognizing that the "Court *may* consider the body-worn camera video without converting this motion to a motion for summary judgment" (emphasis added)).

District courts must tread carefully in looking at factual evidence outside the four corners of the complaint at the motion to dismiss stage, particularly when the evidence creates factual disputes. While defendants "face an alluring temptation . . . to undermine the complaint, and hopefully dismiss the case at an early stage[,] . . . the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). In this case, "[t]he video still has to be interpreted." *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, No. 23-0685, 2025 WL 1331667, at *37 (D.N.M. May 7, 2025). And "making sense of the video requires the Court to exercise its own judgment about what it depicts." *Id.* Exercising such judgment, however, "is the antithesis of how judicial notice works and counsels against relying on the videos at the motion-to-dismiss stage." *Id.* Thus, this Court takes the facts of the Complaint as true and goes no further.

Second, Defendant Beers presses that Oklahoma law forecloses Plaintiff from naming him as a defendant, because he acted within the scope of his employment at the time of the incident. In support, Defendant Beers cites the GTCA, which commands that:

> In no instance in any such action shall an employee of the state or of a political subdivision of the state acting within the scope of employment be named as defendant; provided, however, such person may be named as defendant under alternative allegations that such person did not act within the scope of employment.

Okla. Stat. tit. 51, § 153(C). The Supreme Court of Oklahoma defines "'[s]cope of employment' as performance by an employee acting in good faith within the duties of his office or employment

13

or of tasks lawfully assigned by a competent authority." *Tuffy's, Inc. v. City of Okla. City*, 212 P.3d 1158, 1163 (Okla. 2009). That determination is a factual question. *Id.* (noting that "whether an employee has acted within the scope of employment at any given time is a question for the trier of fact"). So, from the face of the Complaint, this Court cannot conclude that Defendant Beers acted in good faith when he arrested Plaintiff. To the contrary, the Complaint alleges that Defendant Beers had no authority to arrest him, that he was outside the city limits when he did so, and that he trespassed onto Plaintiff's property. Those facts, if anything, suggest that Defendant Beers did not effectuate the arrest in good faith. Construing the factual allegations in the light most favorable to Plaintiff at this phase, this Court finds that Plaintiff has alleged sufficient facts to defeat Defendant Beers's submissions that he acted in good faith when he arrested Plaintiff. As such, Plaintiff may name Defendant Beers as a defendant in the present lawsuit, at least for now.

Third, Defendant Beers argues that he enjoys qualified immunity. (Dkt. No. 18 at 17-20.) Whether qualified immunity shields him from this action hinges on whether Plaintiff alleges a clear violation of a statutory or constitutional right. *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) ("The doctrine of qualified immunity shields officers from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009))). "To survive a motion to dismiss based on qualified immunity, the plaintiff must allege sufficient facts that show—when taken as true—the defendant plausibly violated his constitutional rights, which were clearly established at the time of violation." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012) (citing *Robbins*, 519 F.3d at 1249). In seeking to hold Defendant Beers liable, Plaintiff points to his rights under the Fourteenth Amendment of the Constitution. (Dkt. No. 1 at 4.)

The Due Process Clause of the Fourteenth Amendment commands that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Long-standing precedent suggests that restraining or arresting an individual causes a "deprivation of liberty," thereby triggering the protections embedded in the Due Process Clause. *See Schwartz,* 702 F.3d at 580 (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)). Relevant here, "[a] valid Fourth Amendment excessive-force claim requires a plaintiff to show *both* that a seizure occurred, and that the seizure was unreasonable." *St. George v. City of Lakewood*, No. 20-1259, 2021 WL 3700918, at *4 (10th Cir. Aug. 20, 2021) (quoting *Bond v. City of Tahlequah*, 981 F.3d 808, 815 (10th Cir. 2020), *rev'd on other grounds by City of Tahlequah v. Bond*, 595 U.S. 9 (2021)).

Likewise, under the special relationship doctrine articulated in *DeShaney*, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." 489 U.S. at 199-200. It is precisely those two rights that are at stake here. *See Schwartz*, 702 F.3d at 579 ("Section 1983 provides a private cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution.'" (quoting 42 U.S.C. § 1983)).

That said, in the Complaint, Plaintiff says he began experiencing chest pains and losing consciousness immediately after Defendant Beers shoved him to the ground to arrest him. (Dkt. No. 1 at 3.) Plaintiff also alleges that he did not present a threat to Defendant Beers, and that Defendant Beers had no law enforcement jurisdiction in Plaintiff's premises because the premises are not within the City of Oilton. (Id. at 2-3.) And that means that at the time Defendant Beers attempted to arrest Plaintiff, Defendant Beers had no authority to do so. (Id.) These facts form

the basis for the allegation that Defendant Beers deprived Plaintiff of his liberty interests, and that Defendant Beers used excessive force against him.

Defendant Beers sees it differently. He believes that Plaintiff only alleges one clear constitutional violation: the right to be free from the application of excessive force, which, according to him, cannot even rise above the conclusory and speculative level. (Dkt. No. 18 at 17-20.) Defendant Beers is wrong. As alluded to before, the Complaint not only asserts the right to be free from excessive force, but it also alleges the right to be free from any bodily intrusion within the confines of one's home without probable cause. This right the Constitution clearly guarantees. U.S. Const. amend. XIV. Both rights are well-pled, and both allegations move beyond the conceivable and into the plausible.

Of course, "the rule's contours must be so well defined that it is clear to a reasonable officer that [the police officer's] conduct was unlawful in the situation he confronted." *City of Tahlequah*, 595 U.S. at 12 (quotation marks and citations omitted). "Such specificity is especially important in the Fourth Amendment context, where it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id.* at 12-13 (citing *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (*per curiam*)). But accepting as true the facts from the four corners of the Complaint, there is little room to doubt that Plaintiff properly pled a clear violation of both his liberty interests and right not to be subjected to excessive force while being arrested. And, to that end, since Plaintiff's Section 1983 claim relies on a violation of both rights, this Court allows it to proceed.

**1. Negligence & Assault and Battery Claims**

Plaintiff here pleads two alternative state-law theories of liability: negligence and assault and battery.[3] (Dkt. No. 1 at 4-5.) This Court address each claim in turn, finding them plausibly pled in the Complaint. As to the negligence claim, Defendant Beers argues that it must be dismissed because Plaintiff fails to name a corresponding duty of care. (Dkt. No. 18 at 15-16.) A "duty in negligence cases may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another. Actionable negligence is a failure to discharge a legal duty to the one injured." *Norton v. Hughes*, 5 P.3d 588, 591 (Okla. 2000). "[T]he Oklahoma Supreme Court has assumed, without deciding, 'that a police officer owes a negligence-based duty of care to an arrestee to protect the arrestee from injury.'" *Morris v. City of Sapulpa*, No. 10-0376, 2011 WL 1627098, at *16 (N.D. Okla. Apr. 28, 2011) (quoting *Morales v. City of Okla. City ex rel. Okla. City Police Dep't*, 230 P.3d 869, 878 (Okla. 2010)). In fact, the Oklahoma Supreme Court has "noted that the standard of care imposed upon a police officer in the performance of his arrest functions is less than that of an ordinary citizen." *Id.* at *16 (citing *Morales*, 230 P.3d at 878-80). "[A] police officer's duty is very specific: it is to use only such force in making an arrest as a reasonably prudent police officer would use in light of the objective circumstances confronting the officer at the time of the arrest." *Morales,* 230 P.3d at 880. And here, by alleging that Defendant Beers used excessive force while effectuating an arrest, Plaintiff alleged a violation of that duty of care.

As to the assault and battery claim, Defendant Beers claims that the body-camera video contradicts Plaintiff's allegations of being the victim of an assault and battery. (Dkt. No. 18 at

---

[3] Of course, "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3).

17

16-17.) But, for Plaintiff, that claim does not hold up at the pleading stage. Plaintiff asserts that Defendant Beers attempted to handcuff him without any authority and that Defendant Beers shoved him to the ground with excessive force. (Dkt. No. 1 at 2-3.) That act, which, according to Plaintiff, Defendant Beers lacked authority to perform, resulted in Plaintiff's chest pains and loss of consciousness. (Id.) That lack of authority contention stems from the allegation that Plaintiff was in his home at the genesis of the altercation, and that the location where Defendant Beers attempted to arrest Plaintiff was outside the boundaries of the City of Oilton. And, as said before, this Court does not take judicial notice of the body-camera footage. Thus, taking the facts of the Complaint as true, this Court does not dismiss Plaintiff's negligence, assault, and battery claims against Defendant Beers.

**2. Trespass to Land Claim**

Finally, Plaintiff alleges that Defendant Beers trespassed onto his property. Defendant Beers, in turn, relies on the body-camera footage, a Google Maps image, and the public land records to contend he did not trespass onto Plaintiff's land, and that he was located within the boundaries of the City of Oilton. But neither the image of the map nor the public land records disproves the trespass allegations in the Complaint. They merely point to the place where Defendant Beers allegedly arrested Plaintiff. That is insufficient. And since this Court does not take judicial notice of the body-camera video, it cannot find, at this stage, whether Defendant Beers, at some point during the encounter, trespassed onto Plaintiff's premises. So, this claim, too, may proceed.

## C. Plaintiff's Motion

This Court has considered Plaintiff's Motion for Leave to File Surreplies to Defendants' Motions to Dismiss or, in the Alternative, Leave to Amend the Complaint. (Dkt. No. 29.) The

motion is DENIED AS MOOT in light of this opinion.  But to the extent Plaintiff wishes to seek leave to amend the Complaint, he may refile said motion within thirty (30) days.

### III. CONCLUSION

In light of the foregoing**, IT IS HEREBY ORDERED** that Defendant City of Oilton's motion to dismiss (Dkt. No. 17) be **GRANTED** in accordance with this Opinion and Counts I through VI are **DISMISSED WITHOUT PREJUDICE** as against Defendant City of Oilton.

**IT IS FURTHER ORDERED** that Defendant Beers's motion to dismiss (Dkt. No. 18) be **DENIED** as to all claims.

**IT IS FURTHER ORDERED** that Plaintiff's motion to file surreplies or, alternatively, for leave to amend (Dkt. No. 29) be **DENIED AS MOOT**.  To the extent Plaintiff wishes to seek leave to amend the Complaint, he may refile said motion within thirty (30) days.

**IT SO ORDERED.**

DATED: May 30, 2025

*/s/ Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States Circuit Judge, Sitting by Designation